UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 20-cr-233 (JFK)

MILESH TALREJA,

Defendant. Conference

------------------------------x

New York, N.Y.
**(via telephone)**

April 30, 2020
1:00 p.m.

Before:

HON. JOHN F. KEENAN

District Judge

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
BY: ALEXANDER N. LI, ESQ.
Assistant United States Attorney

PHILLIPS NIZER LLP
Attorneys for Defendant
BY: ILENE B. JAROSLAW, ESQ.
ALISHA L. McCARTHY, ESQ.

Also Present: Dayshawn Bostic
Pretrial Services Officer

Jessica Velez
U.S. Probation Officer

(Via telephone)

THE COURT: Hello. Judge Keenan. All right. As I understand it, this is a rather awkward way to do business and to practice law, but anyhow, we're trying.

All right. This is a conference call. And it involves the matter of the United States of America against Milesh Talreja, which is Indictment No. 20 Criminal 233. I hope that on the phone call here we have, first of all, Ms. Ilene Jaroslaw, who is the counsel for the defendant. Are you on the phone, Ms. Jaroslaw?

MS. JAROSLAW: Yes, your Honor, I am. I'm also here with --

THE COURT: OK. Let me just get all the appearances, please.

MS. JAROSLAW: Sure.

THE COURT: OK. As I said, this is an awkward way of doing business.

All right. Is Alexander Li on, the assistant U.S. attorney?

MR. LI: Yes, your Honor, I am on.

THE COURT: Thank you. Is Dayshawn Bostic on, the pretrial services officer?

MR. BOSTIC: Yes, your Honor, I'm on the call.

THE COURT: Thank you very much. Good. All right.

And my law clerk, Mr. Luke Ryan, is on. And I believe

my courtroom deputy, Mr. William Ryan --

THE LAW CLERK: Yes, Judge.

THE COURT: -- no relation to Luke Ryan, is on the phone.

THE CLERK: Yes, judge.

THE COURT: And do we have a court reporter?

Hello? Do we have a court reporter?

THE COURT REPORTER: Yes, you do, your Honor. It's Paula Speer.

THE COURT: All right. How are you, Ms. Speer? Thank you very much for doing this. I know this is a very difficult way for you to operate, but I appreciate it very much, as do the lawyers.

Is there anyone else on the call?

MS. VELEZ: Yes, your Honor. Jessica Velez with probation.

THE COURT: Good. OK. Fine. Thank you.

Did the court reporter get that appearance?

THE COURT REPORTER: Yes, your Honor, I did.

THE COURT: Thank you. All right.

So, Ms. Jaroslaw, tell me what you wanted to tell me, because you requested the conference, and we're having the conference on the telephone, at 1 o'clock on April the 30th of 2020. And we're doing it by phone because of the situation with Covid-19, the coronavirus. And obviously the defendant

isn't present, because we haven't been able to find him for a while. But you wanted to bring something to my attention and to the attention of the government and probation and pretrial services. So go ahead, Ms. Jaroslaw.

MS. JAROSLAW: Yes, your Honor. Just to be clear, it was Assistant Attorney Li who requested the conference.

THE COURT: Thank you for correcting me.

MS. JAROSLAW: Sure.

THE COURT: I misunderstood.

All right. Thank you, Mr. Li, for requesting the conference.

OK. So, well, I frankly -- you should know this, Ms. Jaroslaw. Nobody asked for it before I decided yesterday, having read the materials submitted to me -- I'm speaking from home -- I had decided to tell probation and the government to request a warrant, because he failed to be in touch with pretrial services. In a letter to me dated April -- not a letter, but a memo to me dated April 24th, Dayshawn Bostic pointed out that pretrial services has made several unsuccessful attempts to reach the defendant, and that also he pointed out to me that they were unable to contact the defendant. I should say that his sister, Candace McKaye, advised pretrial services that she hadn't been in contact with the defendant for over two weeks.

So anyhow, I'm addressing you, Ms. Jaroslaw. What is

the situation? Where is he? Why hasn't he been in touch with pretrial services, as he was supposed to do? And I didn't set the bail. One of the magistrates set the bail here. What's the status of this fellow?

MS. JAROSLAW: Your Honor, those are all very good questions. I last spoke to Mr. Talreja the first week of April, and at that time he was in his apartment in New York City. I've since reached out to him via e-mail, text, phone call, and also through the mother-in-law and sister.

I can infer that he's received my messages because he wrote a lengthy e-mail to AUSA Li last evening. And I've reviewed that. And as I said when I forwarded that to the Court this morning, it's fairly self-explanatory.

I don't have any further information.

THE COURT: I haven't seen the e-mail. So what's in that e-mail? What does he say?

MS. JAROSLAW: Well, it's rather --

THE COURT: I'll let Mr. Li tell me what's in the e-mail.

MS. JAROSLAW: OK, sure.

THE COURT: Why don't I let Mr. Li tell me what's in the e-mail, and then I'll hear what he wants and I'll hear what you want, because he requested the conference. Go ahead, Mr. Li.

MR. LI: Yes, your Honor. So we received an e-mail

late last night dated April 30, 2020, at 12:54 a.m., so late yesterday evening. It's a lengthy e-mail from Mr. Talreja addressed to me, and it's from Mr. Talreja's Gmail address, which I believe is the same Gmail address through which pretrial services has been attempting to contact the defendant.

The letter is lengthy, but in sum and substance, it states that he has been unable to get the two required co-signers, and as a result of his inability to get the two required co-signers, he, as he put it, went to ground while attempting to locate appropriate co-signers.

THE COURT: He went to ground? What do you mean?

MR. LI: Yes.

THE COURT: He absconded?

MR. LI: He writes -- I'll just read it directly. This is the third paragraph. "I have been unresponsive to pretrial services because I have struggled to locate two co-signers for my bond who are based in the United States. Because of this I panicked and went to ground while attempting to locate sureties. I have been thus far unsuccessful not least because of the Covid-19 pandemic and the fact that a proposed signer has recently become unemployed due to the circumstances of the pandemic."

He goes on at length to make various suggestions for potential co-signers and essentially asks for leniency and to state that --

THE COURT: What do you say he --

MR. LI: Asks for leniency.

THE COURT: OK. Sorry. Go ahead.

MR. LI: And he states in his last paragraph that -- and I quote -- "I will of course dial in to any hearing set by the courts. I would appreciate it if you could let me know your position with respect to the sureties as soon as possible." And he signs off.

The e-mail I did not respond to, because he is of course represented by counsel. I immediately forwarded that e-mail to Ms. Jaroslaw, who in turn sent it to the Court. So it is in the Court's possession as well if the Court wants to review it.

THE COURT: OK. You forwarded a copy of that to my chambers, I take it.

MS. JAROSLAW: Yes, I did, your Honor.

MR. LI: Yes. Ms. Jaroslaw forwarded it.

THE COURT: OK. You both did, apparently. All right.

So do you have any application or request or suggestion, Mr. Li?

MR. LI: Yes, your Honor. At this point the government would request a bench warrant be issued for the defendant's arrest. This morning, my understanding is that both the defense counsel and pretrial services have made multiple attempts to contact the defendant, including at the

same e-mail address by which he wrote me yesterday evening. So I think we can fairly infer that he received the messages. I know pretrial services attempted to provide him, through those communications, the dial-in information for this conference call. And the fact is that he is not here today, even though he stated in his e-mail that he would show to any conference order by the Court.

I think that, taken in combination with the multiple violations of the conditions of his pretrial release, most importantly his complete failure to respond at all to pretrial services for over a month, and frankly to his counsel, which is troubling in and of itself -- in addition, we believe that there is an Australian passport that is outstanding. He, through counsel, stated that he --

THE COURT: Wasn't it surrendered?

MR. LI: Your Honor, at the time of his bail being set, he was, at that time, he had been detained on consent at the MCC, and after he pleaded guilty, he was released on bail. At that time --

THE COURT: The crime to which he pleaded guilty is a bank fraud?

MR. LI: Yes, your Honor.

THE COURT: See, I don't know anything about this case because it was resolved on by the magistrate. Normally, as I think you know, I take my own pleas. I don't have the

magistrate get involved at all. But because of the unique situation that we're undergoing because of the virus, apparently there was a waiver and a permission, without my knowing it, for the plea to be taken by the magistrate. OK. I didn't know that, and I didn't approve it or disapprove it. It just happened, without any knowledge by me, or on my part.

In any event, the crime to which he pleaded is some kind of bank fraud. What essentially is the case about?

MR. LI: Yes, your Honor.

THE COURT: I don't have anything other than the pretrial services notice from Mr. Bostic. Go ahead.

MR. LI: Yes, your Honor. In essence what happened is, the defendant walked into a JPMorgan Chase Bank branch. He presented a check that was written out for the amount of $500,000.

THE COURT: 500,000.

MR. LI: Yes, your Honor. A $500,000 check drawn on an account that he held at Bank of America. The check, according to the defendant, he intended to -- his purpose in presenting this check was to get a credit card or multiple credit cards from JPMorgan Chase, and they wanted to see that he had funds in his bank account before they would extend him credit.

In all events, the Bank of America account from which the check was drawn did not have anywhere close to $500,000.

It only had a few thousand dollars. And the check eventually bounced. Before it bounced, however, JPMorgan extended -- they made available to him, in his deposit account, more than a hundred thousand dollars, which he promptly transferred into other bank accounts and withdrew. All told, he was able to take out about $120,000, even though the check ultimately bounced and was not able to recover really any money from that source, Bank of America.

THE COURT: And he pleaded guilty.

MR. LI: And he pleaded guilty. So, in essence, this is a bad check.

THE COURT: Thank you very much.

All right. And so you want a warrant.

Ms. Jaroslaw, what do you have to say?

Hello? Ms. Jaroslaw? Hello?

MS. JAROSLAW: Hello. Can you hear me? Can you hear me?

THE COURT: I hear you, yes.

MS. JAROSLAW: OK. Good.

What I would propose, your Honor, is that we wait until 4 o'clock to issue the warrant. And this is my reason. Mr. Talreja wrote to Mr. Li in the middle of the night. And Mr. Talreja has some, you know, some issues with his mental health. And I can absolutely see a situation where he was up most of the night, slept in, and did not yet check his e-mail.

Further, Mr. Li can't confirm this, but he has information that my client may be in Los Angeles, in which case it's a little bit after 10 in the morning in Los Angeles, and it would not be strange if he had not yet checked the e-mail.

THE COURT: It would have been 10 at night, not 10 in the morning, 10 at night, last night when he made the call, is what you're saying. It would be 10 at night.

MS. JAROSLAW: Yes. If in fact he's in Los Angeles -- you know, we don't know. We don't know if he was up late in New York or if he sent it at 10 at night in California. Either way, it was only a few hours ago that I e-mailed him with the dial-in information, and the same with pretrial services. So it's certainly possible he has not seen the e-mail to call in.

So, your Honor, I would simply ask for two or three more hours to attempt to reach him.

THE COURT: Let me ask you this. Let me ask you this. Did, at the time -- which magistrate set the bail here?

MS. JAROSLAW: Magistrate Cave, your Honor.

THE COURT: At the time the magistrate set the bail, was there a provision that he wasn't to leave the Southern District of New York?

MS. JAROSLAW: The Southern and Eastern Districts of New York. And both pretrial and I went over that with him.

THE COURT: OK. All right. I don't see any problem waiting until 3 o'clock, not 4 o'clock, because 4 o'clock is a

little late. If we don't hear --

MS. JAROSLAW: Thank you, your Honor.

THE COURT: If we don't hear from him by 3 o'clock and find out where he is, a warrant is to be issued. The warrant is stayed until 3 p.m. this afternoon, which is Eastern Daylight Time.

MS. JAROSLAW: Thank you, your Honor.

THE COURT: But if nobody hears from him, the warrant is to issue.

If we hear from him, he is to report immediately to pretrial services, to Mr. Bostic. He has your phone number, correct, Mr. Bostic?

MR. BOSTIC: That is correct. He has my phone number. He has my cellphone number and my e-mail address.

THE COURT: All right. So if you hear from him, Ms. Jaroslaw, he is to immediately contact Mr. Bostic -- not in a half hour, not in ten minutes, but immediately, as soon as he gets off the phone from you or the e-mail from you. Do you understand that?

MS. JAROSLAW: I do, your Honor. And I will impress that upon my client.

THE COURT: Yes. Otherwise the warrant issues.

If there's anything that anybody has to inform me about, let Mr. Ryan, Luke Ryan, my law clerk, know, and he will tell me what is going on. But as of now, the warrant is stayed

until 3 o'clock. And the warrant will issue at 3 o'clock.

Thank you very much, everybody. Is there anything else that anybody wants to say?

MR. LI: Nothing from the government, your Honor.

MS. JAROSLAW: Not from the defense.

MR. BOSTIC: Your Honor.

MS. JAROSLAW: Thank you, your Honor.

MR. BOSTIC: This is pretrial services. We would respectfully like to recommend that the defendant be placed on, if he does contact us, that he be placed on standalone GPS monitoring, if he does contact us today.

THE COURT: OK. That request is granted. Yes.

MR. BOSTIC: Perfect. Thank you.

THE COURT: That request is granted.

All right. Anything else from anybody?

MR. LI: No, your Honor.

MS. JAROSLAW: No, your Honor.

THE COURT: Thank you all very much.

And my thanks to the court reporter for doing this under these difficult circumstances.

THE COURT REPORTER: You're welcome, your Honor.

THE COURT: Mr. Luke Ryan is going to call you in chambers in about three minutes, so stand by, please. Thank you. Bye now.

MR. LI: Thank you very much.

MS. JAROSLAW: Bye, everyone.

o0o